UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH MERCER,<br><br>　　　　　Plaintiff,<br>　v.<br><br>DORA B. SCHRIRO, COMMISSIONER OF THE DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION, THE CONNECTICUT STATE POLICE UNION, INC., AND ANDREW MATTHEWS, PRESIDENT OF CONNECTICUT STATE POLICE UNION, INC.,<br><br>　　　　　Defendants. | Civil Action No.<br>3: 16 - CV - 329 (CSH)<br><br><br>AUGUST 26, 2019 |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [Doc. 63]**

**Haight, Senior District Judge:**

## I. INTRODUCTION

Plaintiff Joseph Mercer initiated this civil rights action, pursuant to 42 U.S.C. § 1983, against Dora B. Schriro, who was then Commissioner of his employer, the State of Connecticut Department of Emergency Services and Public Protection ("DESPP"); the Connecticut State Police Union, Inc. ("CSPU"); and Andrew Matthews, President of the CSPU. Plaintiff was at all relevant times a sergeant with the State Police and alleges that he suffered an adverse employment action by all defendants in this action "when, acting under color of state law, the Commissioner transferred him from his position as Operations Sergeant with Emergency Services to the Office of Counter Terrorism at the request of the CSPU and/or Matthews." Doc. 1, ¶ 7, ¶ 74.

1

In his original Complaint, Plaintiff included two Counts, which he asserted against all defendants. These Counts included: (1) "Violation of 42 U.S.C. § 1983 and the United States Constitution," alleging violations of Mercer's rights to free speech and association under color of state law, and (2) "Violation of Conn. Gen. Stat. § 31-51q," alleging a state statutory violation by infringing on Mercer's "exercise of his freedom of speech and associational rights under the First and Fourteenth Amendments to the United States Constitution, and under Article 1, Sections 4 and 14 to the Constitution of the State of Connecticut." Doc. 1, ¶¶ 73-81, 82-88.

Defendant Schriro and CSPU each filed a motion to dismiss the Complaint. Doc. 24, 36. In ruling thereon, the Court allowed Count One, violation of 42 U.S.C. § 1983, to proceed against the Commissioner in her *individual* capacity with respect to *damages*, "find[ing] no basis in the Complaint's allegations to conclude that the Commissioner [was] entitled to 'qualified immunity' at th[at] time." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 154-55 (D. Conn. 2018).

The Court, however, dismissed Count One against the Commissioner in her *official* capacity for *damages* as barred by the Eleventh Amendment and as failing to state a claim upon which relief may be granted. "If a § 1983 suit against a state official in his or her *official capacity* seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury." 337 F. Supp. 3d at 136 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994)). "Under such circumstances, the action is deemed to be against the State so that the State official is entitled to Eleventh Amendment immunity." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Therefore, "[t]o the extent that Plaintiff seeks *damages* against the Commissioner in her *official* capacity , . . . that claim is barred by the Eleventh Amendment." *Id.* at 137 (emphasis in original).

In addition, pursuant to *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 136. Accordingly, "Plaintiff's § 1983 claim against the Commissioner in her official capacity for damages (and/or retrospective relief for a violation of federal law under § 1983) fails to state a plausible claim because she is not, as a matter of law, a 'person' subject to section 1983 liability." *Id.* at 155 (citing *Will*, 491 U.S. at 71).

In contrast, the Court permitted the § 1983 claim against the Commissioner in her *official capacity* to proceed as to *prospective injunctive relief* regarding her future conduct. *Id.* at 155 (citing *Will,* 491 U.S. at 71 n.10).[1] In *Edelman v. Jordan*, 415 U.S. 651, 664 (1974), the United States Supreme Court held that the Eleventh Amendment does not bar an action against a state official for violation of federal law if the plaintiff seeks an injunction regarding that official's future conduct. The Court thus allowed Plaintiff's requests for an injunction to prohibit all of the defendants in the action "from retaliating against [him] for exercising his First Amendment rights" and to require the Commissioner "to transfer Plaintiff back into the full-time position of Operations Sergeant." *See* Doc. 1 ("Prayer for Relief "), at 24 (¶¶ B.(i)-(ii)). Because these were requests for future injunctive relief (regarding future and continuing constitutional violations), the Court allowed them to proceed. *Mercer,* 337 F. Supp. 3d at 155.

As to the Union Defendants, Plaintiff's § 1983 claim was permitted to proceed against them for damages. Because the allegations in the Complaint could be construed to support a claim that the Union Defendants were "willful joint participants in the Commissioner's decision to transfer

---

[1] At the time the Court entered its ruling on the motions to dismiss, 337 F. Supp. 3d 109, Schriro still maintained her position as Commissioner of the DESPP. As discussed *infra,* at Part II.B.2., she has since resigned from that position and been replaced.

Plaintiff from his Operations Sergeant position in SWAT," Plaintiff "stated a plausible claim that the Union Defendants acted under color of state law to deprive him of his First and Fourteenth Amendment rights in violation of § 1983." *Id.* (citing *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 195 (E.D.N.Y. 2010)).

Finally, the Court dismissed Count Two for violation of Conn. Gen. Stat. § 31-51q as to all defendants. *Id.* The adverse effects of Plaintiff's transfer from his Operations Sergeant position in SWAT to an administrative position in Counter Terrorism – lower status and reduced fringe benefits – were "sufficient to suggest that he was disciplined." *Id. "However,* his claims [were] dismissed because none of the defendants – including the Commissioner and the Union Defendants – was his 'employer' within the meaning of § 31-51q." *Id.* Accordingly, Count Two for retaliatory discipline was dismissed. *Id.*

Plaintiff has now moved to amend and supplement his complaint. Doc. 63. In the motion itself, Plaintiff first seeks to add as defendant his employer, the Department of Emergency Services and Public Protection, State of Connecticut ("DESPP"), as a substitute for Commissioner Schriro, on his claim for violation of Conn. Gen. Stat. § 31-51q. Doc. 63, at 1 (¶ 2). However, upon reviewing Schriro's "Objection" to his motion [Doc. 64], Plaintiff eliminated the DESPP as defendant and also the § 31-51q claim and appended a new proposed "First Amended Complaint" to his response.[2] *See* Doc. 65 & 65-1. Plaintiff has acknowledged that the Eleventh Amendment bars his § 31-51q claim against DESPP, but clarified that he sought "to have the DESPP waive its Eleventh Amendment immunity." Doc. 65, at 3.

---

[2] In her Objection, Schriro had argued correctly that the Eleventh Amendment bars Plaintiff from pursuing claims against DESPP under either 42 U.S.C. § 1983 or Conn. Gen. Stat. § 31-51q. Doc. 64, at 2-4.

4

As Schriro pointed out in her "Objection" to the motion to amend, the Eleventh Amendment prohibits a private party from suing a state in federal court unless Congress has unequivocally expressed the intent to abrogate that immunity or the state waives its immunity. Doc. 64, at 4 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). In particular, the Eleventh Amendment immunity encompasses actions against agencies and departments of a state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Here, "[t]he State of Connecticut has not waived its Eleventh Amendment immunity to actions brought pursuant to Conn. Gen. Stat. § 31-51q." Doc. 64, at 4 (citing *Cook v. McIntosh*, No. CIV 3:97CV773 (AHN), 1998 WL 91066, at *6 (D. Conn. Feb. 20, 1998)).

Plaintiff questioned the wisdom of the State's choice to object to his § 31-51q claim against DESPP, stating that "[t]here may well be good and sufficient reasons for the State/DESPP" to waive that immunity to allow the case to proceed in federal court, "rather than forcing a plaintiff to litigate such claims in two separate courts, and expending State resources in defending related claims in two separate courts." Doc. 65, at 4. Nonetheless, based on Schriro's objection, Plaintiff conceded that the State has "plainly chosen . . . to fiercely defend the State's right under the Eleventh Amendment." *Id.* Consequently, Plaintiff removed the § 31-51q claim and appears to have accepted that DESPP may not be a defendant in this action.

The Court says "appears to have accepted" because Plaintiff has not included DESPP in the paragraphs describing the "Parties" in the proposed "First Amended Complaint" (herein "FAC").[3]

---

[3] The Court reviews Doc. 90-1 as the proposed "First Amended Complaint" or "FAC" because it is the final, revised "clean" version of that pleading following Plaintiff's post-objection revisions [Doc. 65-1, 89-1] and the Court's Order directing such a new submission [Doc. 88]. *See* Doc. 64-65, 67, 88-90.

Doc. 90-1, at 3-4 (¶¶ 7-10). However, DESPP is included as a defendant in the case caption, *id.*, at 1. Moreover, numerous allegations now allege that "Defendant Commissioner *and/or DESPP*" were responsible for transferring Mercer from his Operations Sergeant position within Emergency Services to the Office of Counter Terrorism ("OCT"). *Id.*, at 16-17 (¶¶ 72-73) (emphasis added); *id.*, at 17-18 (¶¶ 76-79) (emphasis added). As Defendant Schriro points out in her "Sur-reply" memorandum [Doc. 67], "[a]lthough Plaintiff has indeed removed DESPP from . . . the 'Parties' section of his Complaint, he continues to direct allegations at DESPP." Doc. 67, at 2-3 (citation omitted).

In particular, in each allegation of Plaintiff's newly added "constructive discharge" section of his "Statement of Facts," the acts which give rise to his claim are attributed to "Defendant Commissioner *and/or DESPP*." Doc. 90-1, at 16-17 (¶¶ 72-73) (emphasis added). Moreover, Plaintiff includes allegations against DESPP under Count I (Violation of 42 U.S.C. § 1983) when he states that he "repeats and realleges paragraphs 1 through 75," as well as when he asserts violations of his rights to free speech when "Defendant Commissioner *and/or DESPP* transferred him." *Id.*, at 17-18 (¶¶ 76-77) (emphasis added). Similarly, Plaintiff alleges that the Defendant Commissioner "*and/or DESPP* would not have transferred [him] in the absence of CSPU's and/or CSPU President Matthews' influence." *Id.*, at 18 (¶ 79) (emphasis added). In sum, DESPP is alleged to have been responsible, in whole or in part, for Mercer's "constructive discharge," as well as violating Mercer's First and Fourteenth Amendment rights.

At the outset, because Plaintiff has conceded that he may not proceed against DESPP, a state agency with Eleventh Amendment immunity, the reference to DESPP in the case caption must be stricken if the Court grants leave to amend. In addition, because DESPP is not a party, Plaintiff may

6

wish to remove allegations which attribute responsibility to DESPP from his claims. If DESPP is not a party to the action, its behavior may not be relevant and/or may even undercut Plaintiff's claims by attributing fault to a non-party, as opposed to a defendant. *See, e.g.*, *Desert Plants Conservancy LLC v. Parsons*, No. CV 11-01599-PHX-ROS, 2012 WL 13019154, at *4 (D. Ariz. July 6, 2012) (granting motion to dismiss where, *inter alia*, "the FAC makes numerous allegations against individuals or entities who are not defendants. . . . The numerous allegations against such non-parties are irrelevant . . . .").

The only other substantive addition Plaintiff inserts into the FAC is the "constructive discharge" section in his "Statement of Facts."[4] That new section will be discussed below as the Court resolves Plaintiff's motion to amend.

## II. DISCUSSION

### A. Standard for Leave to Amend - Rule 15, Fed. R. Civ. P.

In general, pursuant to Rule 15(a), Fed. R. Civ. P., a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the complaint or within twenty-one days after service of a responsive pleading (*i.e.*, answer or motion to dismiss) or of a Rule 12(b), (e), or (f) motion, whichever is earlier.[5] *See* Fed. R. Civ. P. 15(a)(1)(A) and (B). *See also, e.g., Fanning v. Nat'l Grid/KeySpan*, 649 F. App'x 48, 49 (2d Cir. 2016); *Fed. Ins. Co. v. Speedboat Racing Ltd.*,

---

[4] The Court notes that Plaintiff has changed the majority of references to the "Union" in the FAC to "CSPU." Such stylistic revisions simply name the Union with more particularity and are not opposed by Defendants.

[5] The Court says "in general" because the Second Circuit has held that "[a]lthough Rule 15(a) governs the amendment of pleadings, Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (citing Fed. R. Civ. P. 16(b)).

200 F. Supp. 3d 312, 338 (D. Conn. 2016); *Baines v. Pillai,* No. 3:16-CV-01374 (CSH), 2017 WL 1375168, at *1 (D. Conn. Apr. 10, 2017).

In all other cases, as in the one at bar, the plaintiff may amend his complaint only with "the opposing party's written consent or the court's leave," which should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (discussing Rule 15(a)).

**B. Plaintiff's Motion**

*1. Constructive Discharge*

Plaintiff seeks to insert allegations regarding "Sgt. Mercer's Constructive Discharge" into his FAC. Doc. 90-1, at 16-17 (¶¶ 71-73). He defends adding these allegations to his "Statement of Facts" with the assertion that they "allege additional facts relating to Plaintiff's premature constructive discharge from his State employment based on facts already alleged in the Complaint." Doc. 63, at 5 (citing Complaint [Doc. 1], at 16 (¶¶ 72-74)). According to Plaintiff, there is no "undue delay" in his amendment because this constructive discharge occurred during the pendency of this case while the motions to dismiss remained *sub judice* and discovery was stayed. *Id.* Plaintiff thus seeks to allege "facts which developed in that interim, and to claim damages arising from those new developments against the existing Defendants, all based upon the same original facts related to his demotion and transfer." *Id.*

In the case at bar, there is no evidence of bad faith or dilatory motive in Plaintiff's request to

amend. There is also no history of repeated failure to cure deficiencies by amendment. Plaintiff simply seeks to supplement and update his "Statement of Facts" with additional facts in support of his claim. He asserts that these facts were developed while the case was stayed and relate back to allegations previously contained in his Complaint.

It is well-settled that "amendments seeking to insert or correct matters about which parties should have known but did not know are plainly within the scope of Rule 15(a)." *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986). Absent "undue delay" or "undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of the amendment, etc. – the leave should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182 .

Defendant Schriro objects to the amendment regarding alleged "constructive discharge" on the basis of "undue delay in seeking to amend" because Plaintiff allegedly "prematurely left his employment . . . on or about January 1, 2017." Doc. 64, at 11 (citing FAC, ¶ 72). She argues that he has provided "no meritorious explanation as to why he delayed for almost two years in seeking to add these allegations." *Id.* Because of this "delay," she believes she will be prejudiced by the amendment because "new motions to dismiss would have to be filed and discovery would be expanded" to address "a new theory of recovery," constructive discharge. *Id.*, at 11-12. She further states that this would delay the proceedings and "result in the additional expenditure of resources." *Id.*, at 12.

In rebuttal, Plaintiff states that his "additional facts relating to constructive discharge . . . [were] already alleged in the Complaint." Doc. 65, at 5 (citing Doc. 1, at 16 (¶¶ 72-74)). He suggests that Plaintiff "conflat[es] the amendment to add DESPP with the supplementation to add additional facts." *Id.* He is "compelled to concede" that his desired action in federal court against

9

DESPP is barred by the Eleventh Amendment. *Id.* Resultingly, in the absence of the addition of DESPP as a party, he believes that Schriro's arguments regarding delay and relation back are moot. *Id.*, at 6 (citing Doc. 64, at 5-8). In short, his allegations all relate back to those set out in the original Complaint. *Id.*

Courts in this Circuit have "granted motions to amend despite . . . temporal gaps between discovery of the relevant facts and filing of an amended pleading." *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 316 (S.D.N.Y. 2014) (collecting cases). *See also, e.g, Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (noting that "parties in [numerous] cases have been permitted to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims.")(collecting cases); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 383 (2d Cir.1968) (three-year delay not a bar to amendment even with notice of trial readiness); *S.E.C. v. DCI Telecommunications, Inc.*, 207 F.R.D. 32, 34-35 (S.D.N.Y. 2002) (amendment permitted where plaintiff obtained discovery supporting amendment four months before motion); *American Medical Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2006 WL 3833440, at *4 (S.D.N.Y. Dec. 29, 2006) (amendment allowed months after movant learned relevant facts in discovery).

Moreover, as to delay, the Second Circuit has stated that "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing, *inter alia*, *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)). *See also A.V.E.L.A.,* 34 F. Supp. 3d at 316 ("Typically, the moving party's delay, standing alone, is not sufficient reason to foreclose amendment.") (quoting *Rotter v. Leahy*, 93 F. Supp. 2d 487, 497 (S.D.N.Y.2000)). "[W]hile the

addition of a new claim or a change in theory of recovery through amendment may be a factor which contributes to the opposing party's prejudice, it does not constitute undue prejudice per se." *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 385 (D. Conn. 2008) (citation omitted).

To show undue prejudice from delay, a party must show that "the proposed amendment would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *A.V.E.L.A., Inc.,* 34 F. Supp. 3d at 317 (quoting *Monahan v. New York City Department of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)) (internal quotation marks omitted). "Generally, '[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not [themselves] constitute undue prejudice.' " *Id.* at 318 (quoting *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp. 2d 281, 299 (S.D.N.Y. 2000)). "An adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Id.* (citations and internal quotation marks omitted) (collecting cases).

Here, the case is not significantly advanced procedurally. Discovery is ongoing and trial is not yet scheduled. Furthermore, Schriro herself has recently moved, with success, to amend the scheduling order to extend discovery by two months. At her request, the discovery deadline has been expanded to October 15, 2019, which provides months to investigate the facts of constructive discharge.[6] The issue of delay resulting in prejudice is thus essentially mitigated. Schriro has

---

[6] The Court also notes that, like his "transfer" and his "institutional grievance," Plaintiff has included "constructive discharge" in his "Statement of Facts." He has asserted that such discharge relates to "damages arising from . . . new developments" while the matter was stayed. Doc. 63, at

obtained additional time so that there will be "no significant delay" in the proceedings due to the amendment. Discovery will continue, as previously requested by Schriro.

Lastly, the proposed amendment in this case includes no new legal claim. *See* n.6, *supra*. There are thus no grounds for Schriro or the other defendants to expend "significant additional resources" in filing a 12(b)(6) motion to dismiss a new claim. The Court finds no undue delay or undue prejudice.

Moreover, there is no issue of "futility" of amendment. This is not a situation where the amendment may be "futile" due to its failure to state a claim that is "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See, e.g.*, *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 249 (D. Conn. 2014) ("An amendment is considered 'futile' if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."). According to Plaintiff, the "constructive discharge" allegations are relevant to the case with respect to damages, but do not state a separate claim. He will be left to his proof at trial regarding these facts, but futility of amendment is not implicated.

In sum, in the absence of undue delay or resulting prejudice or futility of amendment, leave to amend should be freely granted. Plaintiff's motion to amend will be granted.

### 2. *Substitution of Commissioner - Official Capacity Claims for Injunctive Relief*

Finally, the Court notes that Plaintiff continues to request injunctive relief requiring the Defendant Commissioner "to transfer [him] back into the full-time position of Operations Sergeant."

---

5. Contrary to Schriro's asserted objections, however, Plaintiff does not list "constructive discharge" as a separate claim in his FAC. Rather, he only includes "Count I" (his § 1983 claim) under his "Claims for Relief." *Id.*, at 17. In short, his FAC includes no new, separate "claim." Rather, it contains additional factual allegations which may be investigated during the remaining seven weeks of discovery.

Doc. 90-1, at 20 ("Prayer for Relief") (¶ B.(2)).  However, the Court takes judicial notice that Dora B. Schriro no longer holds the position of Commissioner of the DESPP.  At the end of 2018, she left her position as Commissioner so no longer possesses the authority to reinstate Plaintiff to his former position.[7]  She can no longer provide injunctive relief in an official capacity.[8]

James C. Rovella is the new Commissioner of the DESPP.  He was nominated by Governor Ned Lamont on December 28, 2018, and confirmed by the Connecticut State Senate on February 20, 2019.[9]  Pursuant to Federal Rule of Civil Procedure 25(d), Rovella will be substituted for Schriro with respect to all allegations against the Commissioner in an official capacity for injunctive relief.

Rule 25(d) "provides that when a public officer ceases to hold office, his successor is automatically substituted as a party, regardless of whether the court enters an order of substitution."[10]

---

[7] For information regarding Schriro's resignation from her position as Commissioner, *see, e.g.*, https://www.courant.com/news/connecticut/hc-news-state-police-commissioner-leaves-2018 1120-story.html ("State Police Commissioner Dora Schriro leaves position," 11/20/2018); https://www.journalinquirer.com/politics_and_government/semple-schriro-stepping-down-as-ma lloy-prepares-to-leave-office/article_0e013d12-dd25-11e8-aee1-87f9371aecf9.html ("Semple, Schriro stepping down as Malloy prepares to leave office," 10/31/2018).

[8] Schriro has been "sued in both her official and individual capacities." Doc. 90-1, at 3 (¶ 8).

[9] *See* https://portal.ct.gov/DESPP/Division-of-Emergency-Service-and-Public-Protection/James-C-Rovella-Biography.

[10] Rule 25(d), captioned "Public Officers; Death or Separation from Office," provides:

> An action does not abate when a public officer who is a party *in an official capacity* dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25 (d) (emphasis added).

*Graddick v. Newman*, 453 U.S. 928, 941 (1981). Under these circumstances, "while the action is pending, the officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend the case caption; the Court may also order such substitution at any time." *Jones v. Colvin*, No. 3:16-CV-1685 (VAB), 2018 WL 4845744, at *2 (D. Conn. Oct. 4, 2018) (citing Fed. R. Civ. P. 25(d)). *See also Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) ("Fischer's retirement had no effect on Williams's ability to obtain injunctive relief. It is settled that suits against officers in their official capacity ... are directed at the office itself. So, when a defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant.") (citations and internal quotation marks omitted); *Tanvir v. Tanzin*, No. 16-1176, 894 F.3d 449, 458–59 n.7, 2018 WL 3096962, at *7 n.7 (2d Cir. June 25, 2018) (as amended) ("Suits against public officers that seek damages are directed at the particular officer whose allegedly unlawful actions are claimed to have caused damage to plaintiffs. In contrast, suits against officers in their official capacity, which generally seek injunctive relief, are directed at the office itself. As a result, if the defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant.")(citing Fed. R. Civ. P. 25(d) and 17(d)).

In the case at bar, the Court will substitute James C. Rovella for Dora B. Schriro as Commissioner of the DESPP for all claims against the Commissioner in his *official capacity* for prospective *injunctive relief* under § 1983. Although Rovella was not involved in Mercer's transfer, "[t]he requirement of pleading each defendant's personal responsibility does not apply to such requests for equitable relief" in a § 1983 action. *Young v. Choinski*, 15 F. Supp. 3d 172, 193 (D. Conn. 2014) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "Instead, it is sufficient if the plaintiff names an appropriate supervisory defendant in his official capacity for purposes of

imposing appropriate equitable relief." *Id. See also Ramirez v. Coughlin*, 919 F. Supp. 617, 623 (N.D.N.Y. 1996) (In a § 1983 action, "the doctrine of personal involvement, like the doctrine of qualified immunity, does not bar either declaratory or injunctive relief, which constitute the primary relief sought by plaintiff.") (citing *Wright*, 21 F.3d at 501, and *Tarafa v. Manigo*, 897 F.Supp. 172, 173 n.4 (S.D.N.Y.1995)).

Schriro, who was the Commissioner during Mercer's transfer, remains in the case as an individual defendant sued in her personal capacity with respect to money damages. Plaintiff has alleged her personal involvement in his transfer, and "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087 (1978)). As the Advisory Committee to Rule 25 explained:

> Excluded from the operation of the amended rule [of substitution] will be the relatively infrequent actions which are directed to securing money judgments against the named officers enforceable against their personal assets; in these cases Rule 25(a)(1), not Rule 25(d), applies to the question of substitution. Examples are actions against officers seeking to make them pay damages out of their own pockets for defamatory utterances or other misconduct in some way related to the office . . .

Advisory committee notes, Fed. R. Civ. P. 25.

Here, there will be a Rule 25(d) substitution in that Rovella will replace Schriro as the named Defendant Commissioner in his official capacity for injunctive relief. However, Schriro will remain in the action as an individual defendant, the former Commissioner who is sued in her personal capacity for money damages. She is the person whom Plaintiff alleges engaged in misconduct, thereby injuring him, so should allegedly pay money damages.

## III. CONCLUSION

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and *Foman v. Davis*, 371 U.S. 178, 182 (1962), and its progeny, the Court GRANTS Plaintiff's motion to amend his complaint [Doc. 63] consistent with the following directives. Plaintiff must amend the defendants named in the case caption of his FAC as follows: (1) remove DESPP, (2) add James C. Rovella as Commissioner of the DESPP, sued in his official capacity (for injunctive relief), and (3) modify his reference to Dora B. Schriro to indicate that she is the former Commissioner who is sued solely in her personal capacity (for damages).[11] Plaintiff should also amend his description of the "Parties" contained in the FAC accordingly. *See* Doc. 90-1, at 3 (¶¶ 7-10).

The Clerk is respectfully directed to amend the case docket to reflect Rovella's addition to the action as a defendant in his official capacity as Commissioner of the DESPP. Moreover, defendant Dora B. Schriro should be referenced as "former" Commissioner, a defendant "sued in her personal capacity."

On or before **September 16, 2019**, Plaintiff must file his revised amended complaint, as described above. Due to the addition of Rovella as defendant, Plaintiff must serve Rovella with the summons and amended complaint, in accordance with the Federal and Local Civil Rules for service upon a state official. *See* Fed. R. Civ. P. 4(j)(2), D. Conn. L. Civ. R. 4, Conn. Gen. Stat. § 52-64 ("Service in action against [officer of the] state"). Upon receipt of the amended complaint, all Defendants must thereafter answer or respond within thirty (30) days. The Court directs the parties

---

[11] Plaintiff may also, if so advised, consider removing "DESPP" from the allegations in paragraphs 72, 73, 76, 77, and 79 of his FAC in light of the fact that DESPP is not a party to this action. The Court grants leave for removal of "DESPP" from said paragraphs if Plaintiff elects to do so.

to maintain their pursuit of discovery to expedite the case. Should additional time become necessary, they may move for an extension of the discovery deadline with a showing of "good cause," D. Conn. L. Civ. R. 7(b)2.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       August 26, 2019

                                          */s/Charles S. Haight, Jr.*
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge