## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JOSEPH MERCER,

               Plaintiff,

  v.

JAMES C. ROVELLA, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF THE
DEPARTMENT OF EMERGENCY
SERVICES AND PUBLIC PROTECTION,
DORA B. SCHRIRO, IN HER PERSONAL
CAPACITY, THE CONNECTICUT STATE
POLICE UNION, INC., AND ANDREW
MATTHEWS, PRESIDENT OF
CONNECTICUT STATE POLICE UNION,
INC.,

               Defendants.

Civil Action No.
3:16 - CV- 329 (CSH)


MAY 12, 2022

## RULING ON PLAINTIFF'S CORRECTED MOTION FOR
## ORDER COMPELLING DISCOVERY [Doc. 112]

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

Plaintiff Joseph Mercer brings this civil rights action pursuant to 42 U.S.C. § 1983 following

his non-consensual transfer in October 2015 from his full-time command position of Operations

Sergeant in Emergency Services of the Connecticut State Police to a non-command position within

the Office of Counter Terrorism.  Doc. 93 ("Amended Complaint"),  at 14 (¶ 55). Plaintiff alleges

that Defendants acted "under color of state law" and seeks "declaratory, injunctive, monetary and

equitable relief to redress the violation of [his] rights under the First and Fourteenth Amendments

to the United States Constitution for exercising his right to be a nonmember of the  [Connecticut

1

State Police] [U]nion, [to] refrain from funding CSPU's political and non-bargaining activities, and to advocate on behalf of the rights of nonmembers." *Id.* at 2.  Specifically, Mercer alleges that Defendants retaliated against him by "transferring his job from a supervisory, command position to one that is mostly administrative,"  which has resulted in the "loss of significant potential pensionable overtime and reputation." *Id.*  Defendants in the action include James C. Rovella, Commissioner of the Department of Emergency Services and Public Protection ("DESPP"), in his official capacity; Dora B. Schriro, former Commissioner of the DESPP, in her personal capacity for damages; the Connecticut State Police Union ("CSPU"); and Andrew Matthews, President of CSPU.[1]

Pending before the Court is Plaintiff's "Corrected Motion for Order Compelling Discovery" [Doc. 112]. In that motion, Plaintiff requests that Defendant Rovella (herein "Defendant" or "Rovella") comply with his "Request for Production [number] 4 set forth in Plaintiff's Second Set of Interrogatories and Requests for Production dated December 11, 2019." Doc. 112, at 1.  As set forth below, Rovella  filed objections and responses to that production request on or about January 10, 2020*. Id.*   Despite conferring in good faith regarding this production request, counsel for Plaintiff and Rovella  have been  unable to dispose of their controversy, so Plaintiff has filed the instant motion, asserting that "the information sought is reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 2.

---

[1] Following amendment of the complaint, pursuant to Federal Rule of Civil Procedure 25(d), James C. Rovella was substituted for Schriro as Commissioner of the DESPP with respect to all allegations against that office in an official capacity for injunctive relief. *See* Fed. R. Civ. P. 25(d) ("[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending," that "officer's successor is automatically substituted as a party.")  *See also, e.g. Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) ("It is settled that suits against officers in their official capacity ... are directed at the office itself. So, when a defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant.") (citations and internal quotation marks omitted).

## II.  STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery.   "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).   Moreover, relevant information "need not be admissible in evidence to be discoverable."[2]  *Id.*   *See also S.E.C. v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") (citing Rule 26(b));  *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) (same).

Relevance to the subject matter under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Rule 26(b), however, allows the Court to limit discovery, *sua sponte* or upon motion, when, for example, such "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). *See generally* 7 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶¶ 33.173[3]-[4] (3d ed. 2004) (a party may object to a relevant discovery request if it is "overly broad" or "unduly burdensome").

---

[2]  Under the Federal Rules of Evidence, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence;  and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

To assert a  proper objection to discovery under Rule 26(b)(2), one must do more than "simply inton[e] [the] familiar litany" that the request is " burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984) (internal citations omitted). Instead, the objecting party must demonstrate "specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations omitted)*; see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

In addition, "[w]here a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, No. 3:14-CV-00572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)). *See also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989) ("Where answers to interrogatories are not forthcoming, or documents are not produced, these same rules permit the party desiring discovery to seek a court order pursuant to Rule 37, F[ed]. R. Civ. P.").  Because the Federal Rules are to be construed liberally in favor of discovery, "[t]he party resisting discovery bears the burden of showing why a discovery request should be denied." *Jacobs  v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192, 195 (D. Conn. 2009).  *See also Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009); *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004). Moreover, even when the party resisting discovery objects that the requests are "burdensome, vexatious, and oppressive . . . [i]f the interrogatories are relevant, the fact that they

4

involve work, research and expense is not sufficient to render them objectionable." *United States v. Nysco Lab'ys, Inc.*, 26 F.R.D. 159, 161–62 (E.D.N.Y. 1960).

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). *See also Dauphinais v. Cunningham,* 395 F. App'x 745, 746-47 (2d Cir. 2010) ("[T]he federal rules give district courts broad discretion to manage the manner in which discovery proceeds, and we review discovery rulings for abuse of discretion.") (citations and internal quotation marks omitted); *Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn. 2005) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled.") (quoting *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn.1998)).

### III. PLAINTIFF'S MOTION TO COMPEL [Doc. 112]

On or about December 11, 2019, Plaintiff served Rovella with his "Second Interrogatories and Requests for Production." Doc. 110-1 (Ex. 1 to Affidavit of Plaintiff's counsel, Marc P. Mercier). In response, on January 10, 2020, Rovella served objections. *Id.* (Ex. 2).

Plaintiff's present motion to compel is addressed to Request for Production 4, which seeks "[a]ll documents and communications relating to any and all investigations conducted regarding any incident where SPESU [Connecticut State Police Emergency Services Unit] employees used force or deadly force from 2005 to the present." Doc. 110-1, at 4. However, during a "meet and confer" teleconference with the parties' counsel on April 8, 2020, "Plaintiff agreed to limit the scope of his

Request for Production to uses of deadly force only." Doc. 110, at 2 (¶ 6).  Thereafter, on May 14, 2020, Plaintiff "further limited the scope" of this production request to "ask that Defendant Rovella produce only the Internal Affairs Investigation reports  ('IA [R]eports') for each use of deadly force by SWAT unit members from 2010 to [the] present." *Id.* Despite subsequent communications, the parties have been unable to resolve their dispute regarding production request 4.

## A. Plaintiff's Arguments to Compel Production

In his Memorandum in support of his motion to compel, Plaintiff asserts that Rovella should complete the discovery requested in production request 4 because  it is "relevant, reasonable, and proportional to the needs of the case." Doc. 111, at 3. Plaintiff alleges that Defendant's rationale for his transfer, which may include a deadly force incident in Old Saybrook in October 2015, is "pretextual."[3] *Id.* at 4.   Therefore, documents relating to other deadly force incidents involving SWAT members are "essential"  in order to determine or demonstrate "the critical element of the case" – the "motive of the Commissioner (or other actors) in transferring Plaintiff." *Id.*  at 3.

 Defendants have stated that they "had legitimate, non-discriminatory and/or non-retaliatiory bases for any and all actions taken with respect to the Plaintiff." *Id.* at 3-4.   Moreover, they assert that they "would have taken the same action with respect to Plaintiff in the absence of any protected

---

[3] According to Plaintiff's allegations in the Amended Complaint, the Old Saybrook incident refers to a deadly force event that occurred on October 9, 2015.  During that incident, an armed suspect barricaded himself in a hotel in Old Saybrook, Connecticut. Doc. 93, at 8 (¶ 25).  Sergeant Mercer was the co-commander of the SWAT response team on the scene.  *Id.* (¶ 26).  When communication efforts with the suspect failed, the SWAT team executed a plan with the approval of all SWAT team present. *Id.* (¶¶ 28-29).   During the operation's implementation, the barricaded suspect pointed a gun at one of the SWAT members, which resulted in two other SWAT members shooting the suspect dead. *Id.* (¶ 30).  On or about October 26, 2015, after a closed-door meeting with the former Commissioner Schriro, CSPU President Matthews "filed an institutional grievance against the handling of the Old Saybrook incident, which Sgt. Mercer co-supervised."  *Id.* at 15 (¶ 60).  Plaintiff alleges that this grievance was filed to create a pretext for his transfer.  *Id.*

activity." *Id.* at 4 (citing Doc. 104-2, at 11-12, and Doc. 98, at 11).  Plaintiff believes, however, that the requested documents will provide the opportunity to explore "comparative incidents and treatment of other officers." Doc. 111,  at 4.

In support of his motion, Plaintiff thus asserts that it is critical to "compare Plaintiff's treatment to [that] of others in similar situations." *Id.*   In other words, "how employees were treated in other deadly force incidents is highly relevant to rebutting the State Defendants' defenses."  *Id.* Plaintiff believes that reviewing IA Reports will provide an effective  means of assessing such other deadly force incidents.  *Id.*  Consequently, "the requested discovery falls within the scope of information that is 'reasonably calculated' to lead to the discovery of admissible evidence and should be produced." *Id.* at 7.

In addition, Plaintiff states that the request is "proportional to the needs of . . . Plaintiff's case" because it is probative regarding "whether Defendants had an unlawful motive for his transfer."  *Id.* As to its scope, the request is "not  overbroad" because it is "tailored to target only incidents of deadly force" – as in the Old Saybrook incident –   "so Plaintiff can ascertain how other individuals were treated under similar circumstances." *Id.*   In fashioning a reasonable request,  Plaintiff has limited the documents he seeks  to IA Reports for incidents involving the use of deadly force by SWAT unit members from 2010 to the present, approximately five years preceding the incident to the present.

Finally, Plaintiff characterizes Rovella's objections as "non-specific boilerplate," which has been "adequately addressed by Plaintiff's subsequent limitations to the scope of his request." *Id.* In any event, such objections are "insufficient to overcome Rovella's duty to produce the requested information." *Id.* (citing *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005)

7

("[P]at, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure.") (quoting *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y.1996)).

As to Defendant Rovella's objection based on the attorney-client privilege and/or work product doctrine, Plaintiff notes that this objection fails to indicate the number and/or identity of any such documents and would not, in any event, bar production of documents not subject to those privileges. Doc. 111, at 8. Rovella has produced no privilege log to describe the nature and number of any such documents which might otherwise be subject to production under production request 4. *Id.*

Finally, with respect to confidential personnel files, Plaintiff asserts that the "personal" or "confidential" nature of these files does not bar discovery where they are relevant. Specifically, a party's "right to conduct meaningful discovery outweighs the public policy against the general disclosure of personnel files." *Id.* (quoting *Cason v. Builders First Scource-Southeast Group, Inc.,* 159 F. Supp. 2d 242, 248 (W.D.N.C. 2001)). Moreover, Plaintiff's request "does not seek full personnel files but merely the IA [R]eports relating to deadly force incidents by SWAT unit members from 2010 to the present." Doc. 111, at 8-9. In sum, Plaintiff concludes, "Defendant Rovella's objections are insufficient to justify the withholding of information critical to Plaintiff's case, and he should be ordered to produce the requested documents." *Id.* at 9.

## B. Defendant Rovella's Objections

In response to Plaintiff's Request for Production 4 – requesting "[a]ll documents and communications relating to any and all investigations conducted regarding any incident where SPESU [Connecticut State Police Emergency Services Unit ] employees used force or deadly force

8

from 2005 to the present" – Defendant Rovella has objected as follows:

> The Defendant objects to this request on the grounds of relevancy and proportionality.  The interrogatory seeks irrelevant information, is overly broad, oppressive and unduly burdensome.  It is not proportional to the needs of this case given the issues at stake, the importance of the discovery in resolving the issue and the burden and expense of the proposed discovery outweigh its likely benefit.  Specifically, "all documents" could  encompass voluminous irrelevant material and/or confidential/protected documents contained in personnel files.  This overbroad request could also encompass documents protected by the attorney/client privilege and/or work product doctrine.

Doc. 110-2, at 9.

Rovella  has also briefed his  "Objection to [the] Motion to Compel," urging the Court to deny Plaintiff's motion.   Doc. 116.  In that "Objection," Rovella accuses Plaintiff of omitting key details in his description of counsels' "meet and confer" teleconference  *Id.* at 1.  He also states that since that time,  Plaintiff has "changed the documents that he is requesting." *Id.*  At the April 8, 2020, meeting, Plaintiff's counsel allegedly stated he sought documents involving involuntary transfers of SWAT members, which Plaintiff claimed relate to his involuntary transfer in 2015 from Operations Sergeant in SWAT to the Office of Counter Terrorism.  *Id.*  However, because DESPP does not categorize transfers as voluntary or involuntary, Defendant agreed to use two searches: (1) one related to IA investigations regarding Operations Sergeants' use of deadly force from 2010 to the present; and (2) one designed to search for  "instances of discipline resulting in removal of SWAT members from 2010 until the present time."  *Id.* at 1-2.  Defendant's counsel claims that the results of these searches were provided to Plaintiff.  *Id.* at 2.

Because, however, Plaintiff still  "continued to request all IA's involving use of deadly force by all SWAT members over a ten year period,"  Defendant conducted "a third search involving IA's of *sustained* use of deadly force for SWAT members during the requested time period." *Id.*

(emphasis added).  According to Defendant, a "sustained finding would indicate that the use of deadly force was found to be not appropriate in a given circumstance and would presumably be most likely to lead to discipline or removal from SWAT. " *Id.*  Upon completion of that test, Defendant informed Plaintiff that this search yielded no results.  *Id.*

Now, because Plaintiff seeks "production of all non-sustained IA's involving use of deadly force by SWAT members for a ten year period,"  Defendant argues that the request is "unduly burdensome and not proportional to the needs of the case." *Id.*  First, Defendant characterizes this search as "unlikely to yield any relevant documents." *Id.*  Specifically, "[a] non-sustained IA regarding the use of deadly force would simply indicate that the use of deadly force was found to be appropriate in the circumstances" and "would not contain any information about transfers." *Id.*

Defendant notes that Plaintiff now allegedly seeks documents about "treatment" of SWAT members in an effort to "assess other deadly force situations." *Id.*  However, Defendant emphasizes that in the present case, Plaintiff neither used deadly force nor claims there were improper findings in IA Reports regarding use of deadly force.  *Id.*

Furthermore, Rovella claims that documents relating to the entire SWAT team are not relevant because Plaintiff held the position of Operations Sergeant.  In particular, the "approximately 25-35 individuals" on the SWAT team are not appropriate comparators for Plaintiff because he had "supervisory responsibilities" and was a full-time SWAT member.  *Id.* at 2-3.

In addition,  Rovella contends that the requested search would "necessitate a laborious manual search," involving "potentially voluminous immaterial documents for privilege." *Id.* at 3.  "Moreover, Defendant Schriro was not appointed Commissioner of DESPP until 2014 and so IA's predating 2014 would have slight, if any, probative value in the present case." *Id.*

Rovella further argues that "each IA involving use of deadly force would in itself be voluminous," like the over 1,000-page IA for the deadly shooting at Old Saybrook. *Id.* These lengthy IA's may require "heavy redaction as public safety issues are often implicated." *Id.* Given Rovella's view of the "slight, if any, probative value of non-sustained IA's, the laborious manual search" that would be necessary to make the requested production, and Defendant's prior searches, Rovella concludes that the burden of production outweighs its likely benefit. *Id.* at 4.

Finally, Rovella concedes that his objections based on attorney-client privilege and work product privilege "were related to Plaintiff's original request for production, which encompassed 'all documents' relating to all deadly force call-outs by all ESU personnel, not limited to SWAT members, for a 15 year time period." *Id.* This objection was thus formerly reasonable in light of Plaintiff's original "overbroad request." *Id.* However, to the extent that Rovella is ordered to produce non-sustained IA's regarding use of deadly force by SWAT members, Defendant will of course prepare a log for any claims of privilege." *Id.* at 5.

## C.  Plaintiff's Reply

In response to Defendant's briefed "Objection," Plaintiff asserts that Rovella knew that the agreed upon preliminary searches of the IA Reports did not complete Rovella's obligation to produce documents. Doc. 117, at 4. In recognition of that fact, Rovella's counsel "continued to communicate with Plaintiff's counsel regarding potential additional disclosures," and Plaintiff "attempted to narrow the requested documents to those relating to 'non-sustained IAs involving use of deadly force by a SWAT member from 2010 to [the] present.'" *Id.* (citing email exchange between counsel July 8, 2020). Rovella responded to the narrowed request, stating it could not even "ascertain the number of non-sustained IA's involving use of deadly force by a SWAT member from 2010-present." *Id.*

11

Plaintiff's present request for documents is thus neither duplicative nor resolved.  *Id.* at 5.

Plaintiff also emphasizes that "discovery can be laborious" but discovery efforts must be "weighted against the burden on the other party and the probative value of the information sought." *Id.* at 6.  In the case at bar, Plaintiff claims he acted reasonably in limiting his discovery requests, reducing Rovella's burden in "sorting through files" by "asking for preliminary searches," and granting "significant amounts of time" for Rovella to make preliminary searches.  *Id.*

To the extent that a search for the requested IA Reports may be "laborious," Plaintiff argues that he should not be penalized by Rovella's department's "idiosyncratic and inefficient filing system." *Id.* at 7.  Moreover, the requested search is likely to "yield relevant documents." *Id.* at 7-8 (citing *Taylor v. Metro Transp. Auth.*, No.  18-cv.1278, 2019 WL 2766502, at * 2 (S.D.N.Y. July 2, 2019) ("[W]here a plaintiff's disparate treatment discrimination claim requires use of comparators, evidence regarding similarly situated employees would be relevant.") (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990)).   In Plaintiff's words:

> To uncover the Commissioner's motive for ordering Plaintiff's transfer, Plaintiff should be allowed to review the requested IA Reports and compare the outcome of the underlying situations – whether the team members involved in those uses of deadly force were disciplined, transferred, or required to undergo additional training – with his own.  The requested IA Reports are the best way to divine the Commissioner's motive behind the decision to transfer Plaintiff.

Doc. 117, at 7.

In addition, Plaintiff explains that in the present case, the primary source of information regarding the Commissioner's motive for his transfer lies in the requested IA Reports because they "cover situations, like the Plaintiff's, where Internal Affairs determined [that] the use of deadly force was justified ('non-sustained')." *Id.* at 8.  Although Mercer was "not the individual who used deadly

force," he was the Operations Sergeant during the "Old Saybrook incident," "supervising the SWAT members who used deadly force." *Id.* at 8-9. He was also "transferred in the wake of that incident." *Id.* at 9. The IA Reports may thus provide information as to whether other SWAT members, including those in supervisory roles, suffered adverse employment actions. *Id.*

Finally, as to the requested time frame for the reports – 2010 to the present – Plaintiff believes that the period is relevant even though, as Defendant points out, Schriro's tenure only began in 2014. As Plaintiff summarizes, "DESPP's and the Commissioner's treatment of SWAT members involved in deadly force incidents before and after Schriro's tenure remains relevant to a determination of whether Plaintiff was treated differently by his employer from others in similar situations, regardless of the individual who held the office of Commissioner." *Id.* Plaintiff concludes that the requested production is necessary and outweighs any burden alleged by Rovella. *Id.*

**D. Analysis**

The Court finds that Plaintiff is entitled to his narrowed request for all non-sustained Internal Affairs Investigation Reports involving use of deadly force by SWAT unit members from 2010 to the present. These IA Reports fall within the permissible scope of discovery under Federal Civil Rule 26(b)(1). Pursuant to Rule 26, Plaintiff is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to [his claims] and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, relevant information "need not be admissible in evidence to be discoverable." *Id.*

"Any motion based on Rule 26 is inextricably dependent upon a finding of relevance *vel non.*" *Lamoureux v. Genesis Pharmacy Servs., Inc.*, 226 F.R.D. 154, 162 (D. Conn. 2004). In fact,

"a discussion of relevance is indispensable and essential." *Id.*  In this context, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund,* 437 U.S. at 351.

In the case at bar, because they may provide facts regarding cases of other SWAT members in similar circumstances, the requested IA Reports are relevant for the purpose of determining a central issue in the case: whether Plaintiff was treated differently by his employer than others in similar situations.  Specifically, the requested IA Reports may be probative regarding the Commissioner's motive in transferring Plaintiff from his position of Operations Sergeant in the wake of the "deadly force" Old Saybrook incident.  Absent production of these reports by Defendant, Plaintiff will have no access to the information contained therein, which may have "importance . . . in resolving the issues" of the case, Fed. R. Civ. P. 26(b).  The request, even if substantial, is thus proportional to Plaintiff's evidentiary needs.  Also, regarding the size of his request,  Plaintiff has narrowed the time frame of the reports sought to five (5)  years before his transfer (which occurred on or about October 30, 2015) to the present.  Said documents relate to the years directly before and after Plaintiff's transfer so may reveal the treatment of SWAT members in deadly force incidents during that time frame.  Under those circumstances,  the Court does not find the requested time frame to be overly expansive.

As to Rovella's argument that searching for such documents may be "oppressive and unduly burdensome," Doc. 110-2, at 9,  if the materials sought are relevant, the fact that the search may "involve work, research and expense is not sufficient to render [the request] objectionable." *Nysco Lab'ys,* 26 F.R.D. at 161-62.  Here, Rovella complains that the documents involved are voluminous

and DESPP's filing system is inadequate for the task of producing such documents. According to Rovella, there will be a need to run "manual searches" to find a "list of all non-sustained IA's involving use of deadly force" which will have to be "cross-checked against the SWAT rosters for each year in the requested time period" and "no SWAT rosters [are] available prior to 2014." Doc. 116, at 3. However, the fact that documents may be lengthy and/or maintained by DESPP in a less-than-optimal filing system does not *per se* negate Plaintiff's entitlement to obtain discovery of them for purposes of preparing his case. Defendant cannot bar Plaintiff's receipt of potentially relevant evidence based primarily on complaints regarding the work involved in pulling that evidence and/or premature conclusions that requested documents will not assist his case.

Finally, with respect to confidentiality and privilege objections, Defendant may preserve each with alternative methods. If there are valid confidentiality issues, the parties may wish to consider presenting the Court with a jointly proposed "protective order." Furthermore, as Defendant concedes, problems regarding attorney-client privilege and/or work product privilege may be resolved with logs claiming said privileges. As Defendant states, "[i]n the event that the court orders production of the non-sustained IA's regarding use of deadly force by SWAT members, Defendant will of course prepare a log for any claims of privilege." Doc. 116, at 4-5. Given these considerations, Rovella's objection regarding "confidential/protected documents contained in personnel files," such "boilerplate" language is insufficient to prevent production of the requested IA Reports.[4]

---

[4] Also, as Plaintiff noted, the documents subject to production do not include "full personnel files but merely IA [R]eports relating to deadly force incidents by SWAT unit members from 2010 to present." Doc. 111, at 8-9.

15

## IV.  CONCLUSION

The Court hereby GRANTS Plaintiff's Motion to Compel [Doc.112].  Defendant Rovella is directed to produce the responsive documents to Plaintiff's Request for Production 4,  as set forth in Plaintiff's Second Set of Interrogatories and Requests for Production dated December 11, 2019, and thereafter narrowed by the parties in conference.  Accordingly,  on or before **June 10, 2022**, Rovella must produce the non-sustained Internal Affairs Investigation Reports for each use of deadly force by SWAT unit members from 2010 to the  present.  Failure to comply will be deemed non-compliance with a Court order under Fed. R. Civ. P 37(b), and may result in sanctions, as specified in that Rule.  *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) (describing sanctions imposed on a  party who "fails to obey an order to provide or permit discovery,"  including, *inter alia*, striking pleadings, rendering default against disobedient party, and finding contempt).

Furthermore, pursuant to Fed. R. Civ. P. 37 (a)(5)(A), when a movant prevails on a motion to compel or where the requested discovery is disclosed after the motion was filed, the movant is entitled to "reasonable expenses incurred in making the motion." *See, e.g., Bennett v. Metro-N. R.R. Co.*, No. 3:19-CV-00081 (KAD), 2020 WL 2113589, at *2 (D. Conn. May 4, 2020); *Buturla v. AWTY Prods., LLC*, No. 3:12-CV-01758(CSH), 2015 WL 6942042, at *4, 6  (D. Conn. Nov. 10, 2015).[5]  Consequently, Plaintiff's counsel, if so advised, may submit to the Court an affidavit

---

[5] Rule 37 provides in relevant part:

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A).

itemizing any reasonable expenses incurred in filing the present motion for which Plaintiff requests reimbursement.[6]  Upon receipt, the Court will review said expenses and entertain any objections by Defendant, filed within fourteen (14) days thereafter, which specify  why such an award of expenses would be unjust – *i.e.*, why  Defendant's failure to comply  was "substantially justified," or any "other circumstances [that would]  make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). In that submission, Rovella may also request a hearing if he wishes to be heard by the Court regarding his objections. Ultimately, if reasonable expenses  are presented by Plaintiff and approved, and in the absence of proof by Rovella of a "substantial" justification for failure to respond to the requested discovery, Rovella shall reimburse Plaintiff for said reasonable expenses.

In the interest of expediting just resolution of this case, counsel for all parties are reminded that it is their professional duty to cooperate fully to resolve discovery disputes if and when they arise.  Also, if, as discovery proceeds, the parties should jointly desire to attempt to settle the case, they may move for referral to a Magistrate Judge for a settlement conference.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
May 12, 2022

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[6]  In contemplating such damages, Plaintiff may wish to consider Defendant's counsel's attempts to  negotiate and resolve this discovery dispute, including the conferences held by counsel, the agreed-upon narrowing of discovery terms, and Defendant's preliminary searches of IA Reports. However, in the event Plaintiff pursues attorneys' fees, his counsel must present contemporaneous time records, describing the names, experience, and expertise of the attorneys, their hourly rates, and the particular services rendered in preparing and filing the motion to compel, in compliance with the Second Circuit's articulated requirements in *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (holding contemporaneous time records "a prerequisite for attorney's fees in this Circuit").