## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JOSEPH MERCER,

               Plaintiff,

  v.

JAMES C. ROVELLA, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF THE
DEPARTMENT OF EMERGENCY
SERVICES AND PUBLIC PROTECTION,
DORA B. SCHRIRO, IN HER PERSONAL
CAPACITY, THE CONNECTICUT STATE
POLICE UNION, INC., AND ANDREW
MATTHEWS, PRESIDENT OF
CONNECTICUT STATE POLICE UNION,
INC.,

               Defendants.

Civil Action No.
3:16 - CV- 329 (CSH)

**MAY 16, 2022**

## RULING ON PLAINTIFF'S SECOND  MOTION FOR
## ORDER COMPELLING DISCOVERY [Doc. 118]

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

Plaintiff Joseph Mercer has commenced this action under 42 U.S.C. § 1983, alleging

constitutional violations which resulted in his non-consensual transfer in October 2015 from

"Operations Sergeant" of SWAT, a  supervisory position in the Connecticut State Police,  to a non-

command position in the Office of Counter Terrorism.   In his Amended Complaint, Plaintiff seeks

"declaratory, injunctive, monetary and equitable relief to redress the violation of [his] rights under

the First and Fourteenth Amendments to the United States Constitution for exercising his right to

be a nonmember of the  [Connecticut State Police] [U]nion [("CSPU")], [to] refrain from funding

CSPU's political and non-bargaining activities, and to advocate on behalf of the rights of nonmembers." Doc. 93, at 2.  In particular, Mercer alleges that Defendants retaliated against him by transferring him from his supervisory position to an administrative one, resulting in the "loss of significant potential pensionable overtime and reputation." *Id*.  Defendants in the action include James C. Rovella, Commissioner of the Department of Emergency Services and Public Protection ("DESPP"), in his official capacity; Dora B. Schriro, former Commissioner of the DESPP, in her personal capacity for damages; the CSPU; and Andrew Matthews, President of CSPU.[1]

Pending before the Court is Plaintiff's "Second Motion for Order Compelling Discovery" [Doc. 118]. In the motion, Plaintiff requests that Defendant Rovella comply with his "Third Request for Disclosure and Production dated May 22, 2020," and particularly with Interrogatories 1 to 4 and Requests for Production 1 to 4, 12, and 16. Doc. 118, at 1.  As set forth below, Rovella has filed objections and responses to the interrogatories and production requests at issue.  *Id.*  Despite conferring in good faith, counsel for Plaintiff and Rovella have been unable "to eliminate or reduce the area[s] of controversy" which appear in this motion.  *Id.* at 2.  Plaintiff "states that the information sought is reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding

---

[1] Following amendment of the complaint, pursuant to Federal Rule of Civil Procedure 25(d), James C. Rovella was substituted for Schriro as Commissioner of the DESPP with respect to all allegations against that office in an official capacity for injunctive relief. *See* Fed. R. Civ. P. 25(d) ("[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending," that "officer's successor is automatically substituted as a party.")  *See also, e.g. Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) ("It is settled that suits against officers in their official capacity ... are directed at the office itself. So, when a defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant.") (citations and internal quotation marks omitted).

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case, considering the importance of the issues at stake in the action, the amount in controversy,

the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Moreover, "[i]nformation within this scope

of discovery need not be admissible in evidence to be discoverable." *Id.  See also S.E.C. v.

Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010) ("Relevant information need not be admissible at the

trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.")

(citing Rule 26(b)); *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 593 F. App'x

32, 36 (2d Cir. 2014) (same).

Information "is relevant if:  (a) it has any tendency to make a fact more or less probable than

it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.

R. Evid. 401.  *See also Signify N. Am. Corp. v. Satco Prod., Inc.*, No. 19-CV-6125 (JMA) (SIL),

2020 WL 9455192, at *2 (E.D.N.Y. Oct. 22, 2020); *Vaigasi v. Solow Mgmt. Corp.,* No. 11 Civ.

5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Also,

relevance to the subject matter under Rule 26 is "construed broadly to encompass any matter that

bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Under Federal Civil Rule 34, if served with a document request, a party must produce those

documents which fall within the scope of Rule 26 and are within its "possession, custody, or

control." *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope

of Rule 26(b) ... to produce and permit the requesting party or its representative to inspect, copy, test,

or sample the following items in the responding party's possession, custody, or control....").

Rule 26(b), however, allows the Court to limit discovery, *sua sponte* or upon motion, when, for example, such "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."   Fed. R. Civ. P. 26(b)(2)(C).   *See generally*   7 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶¶ 33.173[3]-[4] (3d ed.2004) (a party may object to a relevant discovery request if it is "overly broad" or "unduly burdensome").

To assert a  proper objection to discovery under Rule 26(b)(2), one must do more than "simply inton[e] [the] familiar litany" that the request is " burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984) (internal citations omitted). Instead, the objecting party must demonstrate "specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations omitted)*; see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947)("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

In addition, "[w]here a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.' " *In re Aggrenox Antitrust Litig.*, No. 3:14-CV-00572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)). *See also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989) ("Where answers to interrogatories are not forthcoming, or documents are not produced, these same rules permit the party desiring

4

discovery to seek a court order pursuant to Rule 37,  F[ed].R.Civ.P.").  Because the Federal Rules are to be construed liberally in favor of discovery, "[t]he party resisting discovery bears the burden of showing why a discovery request should be denied." *Jacobs v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192, 195 (D. Conn. 2009).  *See also Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009); *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004). Moreover, even when the party resisting discovery objects that the requests are "burdensome, vexatious, and oppressive . . . [i]f the interrogatories are relevant, the fact that they involve work, research and expense is not sufficient to render them objectionable." *United States v. Nysco Lab'ys, Inc.*, 26 F.R.D. 159, 161–62 (E.D.N.Y. 1960)

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). *See also Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn 2005) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled.") (quoting *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn.1998)); *Signify N. Am. Corp.*, 2020 WL 9455192, at *3 ("It is well-established that '[m]otions to compel are left to the court's sound discretion.'") (quoting *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016)).

### III.  PLAINTIFF'S MOTION TO COMPEL  [Doc. 118]

**A.  Interrogatories 1 to 4 and Requests for Production 1 to 4**

Plaintiff's Second Motion to Compel seeks responses to "Plaintiff's Third Request for Disclosure and Production" dated May 22, 2020.  In particular, Plaintiff seeks to compel responses to Interrogatories 1 to 4 and the corresponding Requests for Production 1 to 4, as well as Requests for Production 12 and 16.  Interrogatories 1 to 4 ask Defendant to "[s]tate the entire factual basis for the Sixth," "Seventh," "Eighth," and "Ninth" Affirmative Defenses, respectively, in Defendants' "Amended Answer and Affirmative Defenses to Plaintiff's First Amended Complaint."  Doc. 119-1, at 4-5.  The corresponding Requests for Production 1 to 4 request "[a]ll documents relied upon and used in any way to answer Interrogator[ies]" 1 to 4.  *Id.* at 5.

Defendant objects to Interrogatories 1 to 4, each in identical fashion, stating:

> Defendant objects on the basis that the interrogatory is a premature contention interrogatory. This interrogatory is also overly broad and unduly burdensome insofar as it seeks repetitive recitation of the record. Defendant further objects to the extent that the interrogatory seeks information protected by the attorney-client and/or work product privilege and/or calls for the mental impressions of counsel.

Doc. 119-2, at 6-7.  Similarly, Defendant objects to the corresponding Requests for Production 1 to 4, responding to each as follows:

> Defendant objects to this request for production, which is based upon a premature contention interrogatory. This request for production is also overly broad and unduly burdensome insofar as it seeks repetitive recitation of the record. Defendant further objects to the extent that the request for production seeks documents protected by the attorney-client and/or work product privilege and/or calls for the mental impressions of counsel. Non-privileged responsive documents are not being withheld on the basis of these objections.

*Id.* at 7-8.

**B.**     **Analysis**

Interrogatories 1 to 4 and their corresponding document requests refer to the Sixth, Seventh, Eighth, and Ninth Affirmative Defenses set forth in Defendant's Answer [Doc. 104-2, at 12].  These affirmative defenses allege as follows:

- Sixth:  Defendants would have taken the same action with respect to the Plaintiff in the absence of any protected activity.

- Seventh:  Defendants' actions with respect to the Plaintiff were done in the most compelling circumstances.

- Eighth:  Defendant is immune from punitive damages .

- Ninth: Some or all of Plaintiff's claims may be barred by the applicable statute of limitations.

As Defendant asserts, Interrogatories 1 to 4 are "contention interrogatories."  Federal Rule of Civil Procedure 33 governs  interrogatories and provides, in relevant part:

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that *relates to fact or the application of law to fact*, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2) (emphasis added).  Contention interrogatories are interposed "to discover the theory of the responding party's case," "elicit[ing] the responding party's contentions by asking it to state the factual basis underlying its substantive legal claims."  *Sheehy v. Ridge Tool Co.*, No. 3:05-CV-01614 (CFD), 2007 WL 1020742, at *2 (D. Conn. Apr. 2, 2007) (citation omitted). *See also, e.g., Protex Int'l Corp. v. Vanguard Prod. Grp., Inc.,* No. 05-CV-5355(ADS)(ARL), 2006 WL 3827423, at *2 (E.D.N.Y. Dec. 27, 2006) ("[C]ontention interrogatories ask a party: to state what it contends; to state whether it makes a specific contention; to state all the facts upon which it bases

a contention; to take a position, and to explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention.") (citation and internal quotation marks omitted).

A contention interrogatory is "a perfectly acceptable form of discovery[.]"  *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) (citations omitted).  "Such interrogatories may ask another party to . . . state all the evidence on which it bases its contentions, or to explain how the law applies to the facts." *Harnage v. S. Barrone*, No. 3:15-CV-01035(AWT), 2017 WL 3448543, at *7 (D. Conn. Aug. 11, 2017) (quoting *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. 2007)).

As long as the interrogatories call for responses which contain mixed questions of law and fact, they are permissible under Rule 33.  *Sheehy*, 2007 WL 1020742, at *2.   However, if the interrogatories call for answers that "would involve a statement of pure law," they are impermissible. *Id.* (citing 33 Moore's Federal Practice § 33.79 (Matthew Bender 3d ed.)). The provision of Rule 33 which "allows courts to delay answers to contention interrogatories until at or near the close of discovery is appropriately invoked where it is clear that the responding party does not possess sufficient facts to formulate a response." *Id.*   Moreover, that decision to delay is "completely discretionary." *Id.*

In the present case, Interrogatories 1 to 4 specifically ask for "the entire factual basis" for Defendant's Sixth, Seventh, Eighth, and Ninth  Affirmative Defenses.  Doc. 119-1, at 4-5.[2]  These

---

[2]  The Court notes that the fact that Plaintiff requests "the entire factual basis" for Defendant's affirmative defenses does not make these requests "overly broad and unduly burdensome" as Rovella contends.  Such an objection in this context is non-specific boilerplate language which courts have deemed "inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." *In re Priceline.com Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005) (citation omitted).  Moreover, there

8

defenses assert, respectively, that "Defendants would have taken the same action with respect to the Plaintiff in the absence of any protected activity;" "Defendants' actions with respect to the Plaintiff were done in the most compelling circumstances," "Defendant is immune from punitive damages," and "[s]ome or all of Plaintiff's claims may be barred by the applicable statute of limitations." Doc. 104-2, at 12.   Interrogatories 1 and 2 seek the factual bases underlying these affirmative defenses. Interrogatories 3 and 4 seek factual bases, but most likely legal bases as well.  There is nothing improper *per se* about the form of the contention interrogatories posed by the Plaintiff.  Plaintiff has a right to inquire into the factual bases, and/or mixed questions of law and fact, regarding Defendants' allegations. *See, e.g., Doe v. Town of Greenwich*, No. 3:18-CV-01322(KAD), 2020 WL 2374991, at *5 (D. Conn. Feb. 20, 2020).

Nonetheless, as discussed above, pursuant to Federal Civil Rule 33(a)(2), the Court has the prerogative to delay defendant Rovella's need to answer the contention interrogatories, and the corresponding document requests, "until designated discovery is complete, or until a pretrial conference or some other time."  The key word in Rule 33(a) is "may."  *Pouliot v. Paul Arpin Van Lines, Inc.*, No. 3:02 CV 1302(DJS), 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) ("The courts 'may order' the specified delays.").  *See also Sheehy* , 2007 WL 1020742, at *2 ("[W]hether a court decides to delay a party's obligation to answer a contention interrogatory is completely discretionary.").

Rule 33(a)(2)  is "appropriately invoked where it is clear that the responding party does not

---

is no indication that Interrogatories 1 to 4 request Defendant to merely recite facts previously in the record.

possess sufficient facts to formulate a response."[3]   *Sheehy,* 2007 WL 1020742, at \*2.   When the

"court is convinced that the [non-answering party] possess[es] enough information to state the factual

basis" for his claim or defense and "which statutes and regulations" pertain to his/her allegations, "[a]

delay is not appropriate."[4]   *Id.*   On the other hand, "the court, in its discretion, may order responses

to contention interrogatories, even in the early stages of discovery, where responses would assist in

clarifying plaintiffs' allegations and identifying witnesses without imposing undue burdens on the

responding party."   *Weiss v. Nat'l Westminster Bank, PLC,* 242 F.R.D. 33, 64 (E.D.N.Y. 2007).

In the case at bar, the facts which allegedly support the Sixth, Seventh, and Eighth

Affirmative Defenses fall squarely within Rovella's knowledge, as opposed to appearing to be

contingent on facts that Plaintiff or his witnesses may reveal during discovery.   Rovella knows

whether "Defendants would have taken the same action" toward Plaintiff, what "compelling

circumstances" he believes were present when Defendants took their actions (*e.g.*, to transfer

---

[3]  The Court notes that the provision regarding contention interrogatories has been moved from subsection (b) to (c), and finally to (a).  *See* Fed. R. Civ. P. 33 advisory committee notes to 1970, 1993, and 2007.

[4]  As described in the Advisory Committee notes to Rule 33:

[R]equests for opinions or contentions that call for the application of law to fact . . . can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.  On the other hand, under the new language interrogatories may not extend to issues of "pure law," *i.e.*, legal issues unrelated to the facts of the case.

Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer.  Likewise, the court may delay determination until pretrial conference, if it believes that the dispute is best resolved in the presence of the judge.

Fed. R. Civ. P. 33(b) (currently (a)) advisory committee's note to 1970 amendment (citations omitted).

Plaintiff out of his position as Operations Sergeant), and why Rovella believes Defendants are "immune from punitive damages." Doc. 104-2, at 12.   Learning the bases which allegedly support Defendant's affirmative defenses would assist to clarify the allegations and identify witnesses who may provide information related to these defenses.   Therefore, these contention interrogatories may be answered at this time and supplemented in the event additional responsive facts emerge during discovery.[5] The Plaintiff's motion to compel with respect to Interrogatories 1 to 3 and their corresponding Requests for Production 1 to 3 will be granted.[6]

---

[5] The parties are reminded that pursuant to Rule 26(e)(1)(A), they have a continuing duty to update their disclosures in the event new information surfaces that would alter those responses. Specifically, Rule 26 provides:

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> >
> > (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1)(A)(1)-(2).  *See also McKinney v. Connecticut*, No. 3:06-CV-2055 (WWE), 2011 WL 166199, at *2 (D. Conn. Jan. 19, 2011), *aff'd sub nom. McKinney v. Dep't of Transp., Conn.*, 487 F. App'x 605 (2d Cir. 2012).

[6] To the extent that Rovella objects to answering Interrogatories 1 to 3 and/or producing the related documents based on the "attorney-client and/or work product privilege," Rovella is advised not to disclose his counsel's analyses or opinions regarding the facts sought.  Moreover, "[s]eeking the facts . . . which support a particular allegation in a complaint [or answer] violates neither the attorney-client or work product privileges . . . ." *Doe v. Town of Greenwich*, No. 3:18-CV-01322(KAD), 2020 WL 2374991, at *5 (D. Conn. Feb. 20, 2020).  Rovella has not been directed to recount his counsel's analyses, discussions, or opinions regarding the facts of the case. Accordingly, the attorney-client privilege and work product doctrine are not implicated.  *Id.  See also Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D.N.Y. 2007) (ordering plaintiffs to disclose "the facts and documents that support the allegations in their complaint").

With respect to Interrogatory 4, relating to Defendants' Ninth Affirmative Defense ("[s]ome or all of Plaintiff's claims may be barred by the applicable statute of limitations"), certain facts regarding application of the statute of limitations may lie within Plaintiff's knowledge and will be subject to discovery. "A cause of action normally accrues, and the statute of limitations correspondingly begins to run, on the date the plaintiff could first have successfully initiated suit based on that cause of action." *Bedat v. McLean Trucking Co.*, No. B-80-298, 1984 WL 49106, at *2 (D. Conn. Feb. 8, 1984)(*quoting Santos v. District Council of New York*, 619 F.2d 963, 968-69, 103 LRRM 3082 (2d Cir. 1980)), *aff'd*, 794 F.2d 676 (2d Cir. 1984). For example, relevant facts may include, *inter alia,* events Plaintiff contends gave rise to his claim(s), when those events occurred, and whether the relevant facts occurred on one date, over a period of time, or on a continuing basis.[7] There may be dates in question that are disputed by the parties.

Furthermore, when Plaintiff became aware of his alleged injury is relevant because "[a] cause of action accrues once the plaintiff knows or has reason to know of the injury that is the basis of the action." *Thompson v. Rovella*, No. 3:15-CV-01742 (VLB), 2017 WL 601399, at *3 (D. Conn. Feb. 14, 2017) (citation and internal quotation marks omitted). *See also Doe v. Mastoloni*, No. 3:14-CV-00718 (CSH), 2016 WL 593439, at *5 (D. Conn. Feb. 12, 2016) ("Under the discovery rule, accrual is delayed until the plaintiff has discovered his cause of action.") (citation and internal quotation marks omitted). Therefore, discovery may reveal what Plaintiff knew and when he knew it. *See, e.g.*, *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1980) (With respect to the

---

[7] *See, e.g., Kramer v. Vitti*, No. 3:15-CV-1230 (SRU), 2016 WL 1069044, at *3 (D. Conn. Mar. 17, 2016) ("When a wrong sued upon consists of a continuing course of conduct, the statute of limitations does not begin to run until that course of conduct is completed.") (quoting *Slainte Investments Ltd. P'ship v. Jeffrey*, No. 3:14-CV-01750 (CSH), 2015 WL 6692242, at *14 (D. Conn. Nov. 3, 2015)), *aff'd,* 757 F. App'x 1 (2d Cir. 2018).

"statute of limitations regarding a § 1983 claim, . . . [w]here no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent.").

Although Interrogatory 4 and the corresponding production request elicit relevant information, because of their nature, they "are more appropriate after a substantial amount of discovery has been conducted." *McCarthy v. Paine Webber Grp., Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996). In other words, "even if the information [sought] is relevant, the interrogatories are premature." *Id.* Plaintiff's motion to compel responses to Interrogatory 4 and corresponding Request for Production 4 will be denied at this time. However, Rovella is directed to respond to this contention interrogatory and the related production request within fourteen (14) days after discovery closes.

## C.  Requests for Production 12 and 16

Plaintiff's Second Motion to Compel also seeks documents under his Requests  for Production 12 and 16, as set forth in "Plaintiff's Third Request for Disclosure and Production," dated May 22, 2020. Both of these production requests ask for institutional grievances filed by the Connecticut State Police Union ("CSPU").  Request for Production 12 states:

> Produce the complete file of and/or any documents relating to any institutional grievance(s) filed by the Connecticut State Police Union concerning appointments to the position of Operations Sergeant from 2010 through the present time.

Doc. 119-1, at 7. Request for Production 16 seeks:

> The complete file of and/or any documents relating to any institutional grievance(s) filed by the Connecticut State Police Union and/or any of its agents or officers concerning appointment of Sergeant Kenneth Albert to the position of Operations Sergeant in or about October 2015.

13

*Id.*

      In response to Request for Production 12, Defendant filed the following Objection:

      Defendant objects on the basis that this request for production is overly broad and unduly burdensome as it seeks "any documents relating to any institutional grievance" which could potentially include documents that are irrelevant and immaterial. This request for production is also oppressive and unduly burdensome to the extent that it is duplicative of Plaintiff's prior requests for production (*i.e.*, *see* RFP ## 22-23, 43 in Plaintiff's First Set). Defendant further objects to this request for production insofar as it seeks documents protected by the attorney-client privilege and/or work product privilege. Defendant also objects on the basis that this request for production goes beyond the agreement of counsel to extend the discovery deadline for the limited inquiry into Defendant's Amended Answer and Affirmative Defenses. Responsive documents are not being withheld on the basis of these objections.

Doc. 119-2, at 10-11.

      Similarly, Defendant objected to Request for Production 16 in essentially identical fashion:

      Defendant objects on the basis that this request for production is overly broad and unduly burdensome as it seeks "any documents relating to any institutional grievance" which could include documents that are irrelevant and immaterial. This request is also oppressive and unduly burdensome to the extent that it is duplicative of Plaintiff's prior requests for production (*i.e.*, *see* RFP #43 in Plaintiff's First Set and RFP ##12, 15 in Plaintiff's Third Set). Defendant further objects insofar as this request for product[ion] seeks documents protected by the attorney-client and/or work product privilege. Defendant also objects on the basis that this request for production goes beyond the agreement of counsel to extend the discovery deadline for the limited inquiry into Defendant's Amended Answer and Affirmative Defenses. Responsive documents are not being withheld on the basis of these objections.

*Id.* at 12.

As with Interrogatories 1 to 4 and Requests for Production 1 to 4, despite conferring in good faith, the parties have been unable to eliminate or reduce the areas of controversy, Doc. 118, at 2 (¶ 1).

      At the outset, the Court notes that the documents sought are relevant to a central issue in Plaintiff's case: whether his employer treated him differently than others in similar situations when,

following the Old Saybrook incident, on or about October 30, 2015, he was transferred against his will from his full-time supervisory position of Operations Sergeant to a non-command position with the Office of Counter Terrorism.[8] The documents sought thus include institutional grievances relating to appointments to the position of Operations Sergeant from 2010 through the present time, and particularly said grievances relating to the appointment of Kenneth Albert, who replaced Plaintiff as Operations Sergeant. It thus follows that Rovella does not contest the relevance of the documents sought, which fall within the broad scope of discovery delineated in Rule 26(b)(1), Fed. R. Civ. P.

Plaintiff represents that following the parties' "meet and confer sessions" on August 6 and 19, 2020, the sole issue remaining between the parties was and is the scope of the search to be performed by Rovella in response to Requests for Production 12 and 16.   Doc. 120, at 15.  Plaintiff argues that Rovella has failed to conduct a reasonable search in his production of documents responsive to Requests 12 and 16.  *Id.* at 15-16.   Specifically, Plaintiff asserts that Rovella has unreasonably limited his search to physical grievance files held by a single custodian, James Canon. *Id.*  Federal Rule of Civil Procedure 34 requires the production of *all* documents, including "electronically stored information" ("ESI"), in response to a valid discovery request. *See* Fed. R. Civ.

---

[8]   According to Plaintiff's allegations in the Amended Complaint, the Old Saybrook incident refers to a deadly force event that occurred on October 9, 2015.  During that incident, an armed suspect barricaded himself in a hotel in Old Saybrook, Connecticut.  Doc. 93, at 8 (¶ 25).  Sergeant Mercer was the co-commander of the SWAT response team on the scene.  *Id.* (¶ 26).  When communication efforts with the suspect failed, the SWAT team executed a plan with the approval of all SWAT team present. *Id.* (¶¶ 28-29).   During the operation's implementation, the barricaded suspect pointed a gun at one of the SWAT members, which resulted in two other SWAT members shooting the suspect dead. *Id.* (¶ 30).   On or about October 26, 2015, after a closed-door meeting with the former Commissioner Schriro, CSPU President Matthews "filed an institutional grievance against the handling of the Old Saybrook incident, which Sgt. Mercer co-supervised." *Id.* at 15 (¶ 60).  Plaintiff alleges that this grievance was filed to create a pretext for his transfer. *Id.*

P. 34(a)(1)(A) (permitting party to serve a request to produce "any designated documents or electronically stored information" within the scope of Rule 26(b)). Plaintiff thus requests that Rovella be required to "conduct a search for electronically stored information ('ESI') and produce all relevant documents retrieved thereby." Doc. 120, at 15.

In contrast, Rovella claims he "did not waive any of [his] objections" to Requests 12 and 16 during a meet and confer session, and he made "no agreement as to generally relevant custodians" regarding those requests. Doc. 121, at 6. He also asserts that he has already produced the "complete file for grievances related to appointments to SWAT," which included ESI related to those grievances. *Id.* at 7. He thus submits that an additional ESI search would be redundant. *Id.* Moreover, Rovella reports that he found no grievances regarding SWAT appointments prior to 2015 so there is no basis for him to conduct a separate ESI search before 2015. *Id.*

Defendant also objects to including two individuals, Michael Darcy and Edward Bednarz, on the list of custodians for additional ESI. *Id.* He explains that neither held the position of commanding officer and executive officer of the Emergency Services Unit ("ESU"), respectively, till 2015 so neither would be a relevant custodian prior to 2015, the year of Plaintiff's transfer. *Id.* Therefore, if the Court orders Rovella to conduct an additional ESI search, he respectfully submits that the ESI search be limited to the other requested custodians (*i.e.*, Schriro, Canon, Hyatt, and Meraviglia) and employ the keywords "grievance" and "operations sergeant" for the time period of 2015 to 2020.[9] *Id.* at 8.

As to Request 16, regarding the appointment of Kenneth Albert as Operations Sergeant,

---

[9] Rovella indicated that he offered this potential resolution of the discovery dispute during the "meet and confer" sessions, but it was rejected by Plaintiff. Doc. 121, at 8.

Rovella states that he "produced the complete files for grievances regarding appointments to SWAT, which would necessarily include any grievances pertaining to Albert." Doc. 121, at 8.  Because Albert only became Operations Supervisor in 2015, Defendant "contends in the first instance that [he] should not be required to perform additional ESI in light of the numerous documents already produced." *Id.*

Plaintiff responds to Defendant's objections by arguing that it is disingenuous of Rovella to assert that an "additional" ESI search would be "redundant because the physical files" he produced were "print-outs of certain ESI information." Doc. 122, at 8.  As Plaintiff asserts, "Rovella has a duty to perform a diligent search of the relevant ESI and not rely upon an outdated system of printing out certain documents and placing what it chooses in a physical folder." *Id.*

In addition, Plaintiff disagrees with Rovella's suggestion that he not have to conduct ESI searches for documents generated between 2010 and 2015 because there were no physical files of grievances before 2015.  *Id.* at 8-9.  Plaintiff points out that there "may be relevant documents stored electronically that did not end up in the physical files and Rovella has a duty to perform a reasonable search," which he believes may yield information about the appointment process or those appointed. *Id.* at 9.

With respect to Rovella's notion that Requests 12 and 16 may be duplicative to requests previously made in Plaintiff's First Set of Interrogatories, Plaintiff argues that Rovella failed to conduct ESI searches for said prior production requests.  *Id.*  Plaintiff thus states that "Rovella cannot rely on his failure to conduct an adequate search related to prior discovery responses as a reason for failing to adequately respond to the current set of discovery." *Id.*  Such a statement suggests that the parties disagree as to the potential fruitfulness of an ESI search regarding grievances before 2015.

17

Plaintiff notes that Rovella has objected to searching for proposed custodians Darcy and Bednarz simply because they did not ascend to ESU leadership until 2015.  *Id.* at 9-10.  However, with respect to at least Bednarz, Plaintiff believes that he could "well have information relevant to the issues in this case and regarding the appointments of Operations Sergeants" because he was a "member of ESU before 2015." *Id.* at 10.

With respect to Request 16, Plaintiff disagrees with Rovella's objection to conducting an ESI search for documents after 2015, "the year the grievance over Albert's appointment [if any] was filed."  Doc. 122, at 10.  Plaintiff reasons that it is "clearly necessary to extend the search beyond 2015 in order to recover documents pertaining to the resolution of the grievance, which [would be] relevant to Plaintiff's case." *Id.*  Moreover, it would be improper to limit an ESI search to the terms "grievance" and  "operations sergeant" as keywords because Rovella has already produced documents that use the phrase "hand-picked employee" and not "operations sergeant." *Id.*  An ESI search should thus encompass the phrasing actually used and other phrases necessary to retrieve relevant documents.  *Id.*

**D.  Analysis**

The Court finds that the parties agree that Requests for Production 12 and 16 may yield documents and information relevant to the case and thus within the scope of Rule 26(b).  Specifically, the requests pertain to the issue of whether Plaintiff was treated differently with respect to his appointment as Operations Supervisor.  Plaintiff alleges that CSPU President Matthews filed a grievance related to his appointment because Matthews alleged that the appointment violated the CSPU/State collective bargaining agreement ("CBA") for the applicable unit due to the fact that

there had been no "selections process."[10]  Doc. 93, at 7-8 (¶ 23).  Plaintiff, however, alleges that his appointment had been made in the same manner as those of all of his  predecessors – without a "selections process" at the sole discretion  of his commanding officer of the Emergency Services.[11]  *Id.* at 8 (¶ 24).  Furthermore, on October 30, 2015, Sergeant Kenneth Albert was appointed as Plaintiff's successor as Operations Sergeant without a "selections process."  *Id.* at 14-15 (¶ 56).  Therefore, pursuant to Matthews' reasoning, it is necessary to discover the existence and basis for any grievances regarding the appointment of Albert.

The discovery dispute at bar thus focuses on the scope of the search mandated by Requests for Production 12 and 16. The Court finds that, as Plaintiff suggests, ESI discovery falls explicitly within the scope of document requests under Federal Civil Rule 34.  *See* Fed. R. Civ. P. 34(a)(1)(A) ("A party may serve on any other party a request within the scope of Rule 26(b): . . .  any designated documents *or electronically stored information* . . .stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .")(emphasis added). *See also Aviles v. S&P Glob., Inc.*, No. 17-CV-2987 (JPO) (KHP), 2021 WL 2077932, at *3 (S.D.N.Y. May 24, 2021) ("Under Federal Rule of Civil Procedure 34(a), a requesting party is entitled to ESI in the 'possession, custody, or control' of its adversary as long as the operative request is within the scope of Rule 26(b)."). Disclosure of

---

[10]  The Court notes that on October 26, 2015, President Matthews also filed an institutional grievance against the handling of the Old Saybrook incident, which Mercer had co-supervised.  Doc. 93, at 15 (¶60).  In that grievance, Matthews alleged that both the CBA and department procedure had been violated.  *Id.*

[11]  Plaintiff alleges that "CSPU never filed institutional grievances over the appointments of [his] predecessors" as Operations Sergeant; but "[u]nlike Sgt. Mercer, all of his predecessors were CSPU members." Doc. 3, at 8 (¶ 24).

electronically stored documents is thus required under Plaintiff's document requests 12 and 16.

As to custodians for ESI, the parties disagree only with respect to two custodians, Darcy and Bednarz. The Court is persuaded by Plaintiff that Bednarz should remain on the custodian list because he was a "member of ESU before 2015." Doc. 122, at 10. As Plaintiff alleges, Bednarz "could well have information relevant to the issues in this case and regarding the appointments of Operations Sergeants." *Id.* As to Darcy, on the other hand, that "custodian" need not be included in the search because he did not ascend to leadership in the ESU until 2015. In his briefing on this motion to compel, Plaintiff provided no reason to justify Darcy's inclusion. Therefore, for purposes of the ESI custodian list, those included shall be: Dora Schriro, James Canon, Edward Bednarz, Warren Hyatt, and Brian Meraviglia.

Regarding the substance of the ESI search, Defendant shall search with keywords suggested by the actual language of Requests 12 and 16, including such terms as "grievance" and "operations sergeant," as well as "hand-picked employee" and other useful terms that may emerge in the course of the search. Defendant and Plaintiff should continue to confer, if necessary, regarding appropriate search terms.

With respect to the time frame, Rovella's ESI search under Request 12 should cover the time period of 2010 to the present. However, with respect to Request 16, as Plaintiff points out, Arnold was appointed in October 2015 so any grievances related to said appointment would not have been filed until *after* that appointment. Doc. 122, at 10. Therefore, it is "necessary to extend the search" regarding Arnold from October 2015 to the present in order to "recover documents pertaining to the resolution of the grievance, which are relevant to Plaintiff's case." *Id.* Moreover, extending the period to the present adds approximately six and one-half additional years, a reasonable span of time

20

to indicate whether appointments made following Plaintiff's transfer and without a "selection process" were in fact viewed as warranting institutional grievances regarding those appointed (as was Plaintiff's appointment).

Finally, the parties are reminded that "[t]he Federal Rules of Civil Procedure, case law, and the Sedona Principles all emphasize that electronically stored information ('ESI') should be a party-driven process." *Saliga v. Chemtura Corp.*, No. 3:12-CV-832 (RNC)(DFM), 2013 WL 6182227, at *1 (D. Conn. Nov. 25, 2013) (quoting *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.,* 255 F.R.D. 350, 358 (S.D.N.Y.2008)).[12]

"[C]ooperation between counsel regarding the production of electronically stored information allows the parties to save money, maintain greater control over the dispersal of information, maintain goodwill with courts, and generally get to the litigation's merits at the earliest practicable time." *Saliga,* 2013 WL 6182227, at *1 (citation omitted). *See also William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Of course, the best solution in the entire area of electronic discovery is cooperation among counsel.").  The parties should continue to "meet and confer," as necessary, "to develop a discovery plan that discusses 'any issues about disclosure or discovery of [ESI], including the form or forms in which it should be produced.'"

---

[12] As explained by the Court in *Aguilar*:

> The Sedona Conference ("Conference"), a nonprofit legal policy research and education organization, has a working group comprised of judges, attorneys, and electronic discovery experts dedicated to resolving electronic document production issues. Since 2003, the Conference has published a number of documents concerning ESI, including the Sedona Principles. Courts have found the Sedona Principles instructive with respect to electronic discovery issues.

255 F.R.D. at 355 (citations omitted).

*Saliga,* 2013 WL 6182227, at *1  (quoting  Fed. R. Civ. P. 26(f)(3)(C)).

## IV.  CONCLUSION

The purpose of discovery is to allow the parties to litigate based on complete information because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).   With this principle in mind, based on the foregoing, Plaintiff's "Second Motion to Compel" [Doc. 118]  is GRANTED IN PART and DENIED IN PART.

With respect to Interrogatories 1 to 3, relating to Rovella's Sixth through Eighth Affirmative Defenses,  these contention interrogatories must be answered at this time and may supplemented in the event additional responsive facts emerge during discovery. Moreover, Defendants must produce the requested materials, if any,  in response to the corresponding Requests for Production 1 to 3.  The facts which allegedly support the applicable affirmative defenses fall squarely within Rovella's knowledge, as opposed to appearing to be contingent on facts that Plaintiff and/or his witnesses may reveal during discovery.

On the other hand, the Court exercises its discretion to find Interrogatory 4 and its corresponding Request for Production 4 more appropriately answered at the close of discovery. Interrogatory 4 relates to Rovella's Ninth Affirmative Defense, alleging that Plaintiff's claims are barred by the applicable statute of limitations.  There may remain relevant facts to be discovered regarding events bearing on the accrual of Plaintiff's claims and the running of the statute(s) of limitations.  As to Interrogatory 4 and Request for Production 4, Plaintiff's "Second Motion to Compel" is DENIED.  Defendant must respond to Plaintiff's Interrogatory 4 and its corresponding Request 4 on or before fourteen (14) days following the close of discovery.

As to Requests for Production 12 and 16, Plaintiff's "Second Motion to Compel" is GRANTED.   Rovella must produce the documents and ESI: (1) "relating to any institutional grievance(s) filed by the Connecticut State Police Union concerning appointments to the position of Operations Sergeant from 2010 through the present time;" and (2) "relating to any institutional grievance(s) filed by the Connecticut State Police Union and/or any of its agents or officers concerning appointment of Sergeant Kenneth Albert to the position of Operations Sergeant in or about October 2015." Doc. 119-1, at 7.   These documents are relevant to the central issue of whether Plaintiff's employer treated him differently than others in similar situations when it transferred him against his will from the full-time supervisory position of Operations Sergeant to a non-command position with the Office of Counter Terrorism.   The responsive production of the materials sought should comport with the terms discussed in Part III.D herein, subject to any subsequent agreements the parties may make in "meet and confer" sessions to adjust those searches.

All discovery compelled pursuant to this Ruling – responses to Interrogatories 1 to 3 and Requests for Production 1 to 3, 12, and 16 – must be completed by Defendant on or before **July 14, 2022.**

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), Plaintiff is entitled to "reasonable expenses" incurred in making a successful motion to compel.   In this case, Plaintiff prevailed in part and may seek said expenses as to the winning portions of his motion.   If he elects to seeks such expenses, he must submit to the Court a detailed affidavit itemizing his reasonable expenses incurred in filing the portions of the motion upon which he succeeded.[13]   Upon receipt, the Court will review said

---

[13]  With respect to attorneys' fees, Plaintiff's counsel must present contemporaneous time records, describing the names, experience, and expertise of the attorneys, their hourly rates, and the particular services rendered in preparing and filing the motion to compel, in compliance with the

expenses and entertain any objections by Defendant, filed within fourteen (14) days thereafter, which specify why such an award of expenses would be unjust –*i.e.*, why Defendant's failure to comply was "substantially justified," or any "other circumstances [that would] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). In that submission, Rovella may also request a hearing if he wishes to be heard by the Court regarding his objections. The Court will thereafter rule on Plaintiff's motion, if any, taking into account any proffered responsive defense(s) by Rovella.

      It is SO ORDERED.

      Dated: New Haven, Connecticut
            May 16, 2022

                                   */s/Charles S. Haight, Jr.*
                                   CHARLES S. HAIGHT, JR.
                                   Senior United States District Judge

---

Second Circuit's articulated requirements in *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (holding contemporaneous time records "a prerequisite for attorney's fees in this Circuit").